1
2
3
4
5
6
7

David Frazee (State Bar No. 195375)
Greenberg Traurig LLP
Silicon Valley Office
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: frazeed@gtlaw.com
Attorneys for Plaintiffs MATTHEW MULLENWEG
AND AUTOMATTIC INC.

ORIGINAL
FILED

NOV 3 0 2005

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

COPY

8
9
10
11

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

12

C 05 4954

13
14
15
16
17
18
19
20
21

MATTHEW MULLENWEG, an individual,
and AUTOMATTIC INC., a Delaware
Corporation,

             Plaintiffs,

     v.

RIC JOHNSON, an individual, and
OPENDOMAIN.ORG,

          Defendants.

) Case No.:
)
)
) **COMPLAINT FOR**
) **TRADEMARK**
) **INFRINGEMENT, CYBER-**
) **SQUATTING, TRADEMARK**
) **DILUTION, UNFAIR BUSINESS**
) **PRACTICES, DECLARATORY**
) **RELIEF, DEFAMATION, AND**
) **RELATED CAUSES OF**
) **ACTION**
)
) **DEMAND FOR JURY TRIAL**

WHA

22
23
24
25
26
27
28

Plaintiffs Automattic Inc. and Matthew Mullenweg allege as follows:

NATURE OF THE ACTION

1.    This is an action for trademark infringement, trademark dilution, unlawful business practices, cybersquatting, and related causes of action arising from Defendants' conscious and willful adoption and use of the name and trademarks of Plaintiffs, as well as other unlawful actions.

2.    Defendants by their own admissions are in the express business of actions that constitute illegal cyberpiracy under state and federal law. Defendants deliberately acquired a domain name that is identical to and dilutive of Plaintiffs' trademarks, with full knowledge of and specifically because of the fame and goodwill created by Plaintiffs in trademarks. Defendants acquired the name for their own commercial advantage and continue to utilize the name and trademarks of Plaintiffs improperly and illegally.

JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1338, 1331, and 1332. In addition to original jurisdiction over both the federal claims and the state law claims under 28 U.S.C. § 1338(b), this Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

4.    This Court has personal jurisdiction over Defendants because Defendants have purposely availed themselves of the privileges of conducting activities in California; the claim arises out of Defendants' forum-related activities; and the exercise of jurisdiction is reasonable.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this Complaint occurred in this judicial district and pursuant to 28 U.S.C. § 1391(c).

COMPLAINT

<div align="center">

THE PARTIES

</div>

6.    Plaintiff Matthew Mullenweg ("Mr. Mullenweg") is an individual residing in San Francisco, California. In 2003, Mr. Mullenweg was primarily responsible for the development of WordPress, one of the leading software packages for the posting of web logs, or "blogs." Through the development of the WordPress service and products, Mr. Mullenweg has achieved recognition in the blogging world and commercial revenues.

7.    Plaintiff Automattic Inc. ("Automattic") is a Delaware corporation with its principal place of business located in San Francisco, California. Plaintiff Automattic was formed in 2005 by Mr. Mullenweg for the purposes of commercializing the WordPress service and products. Automattic is the assignee of certain intellectual property rights involving WordPress, including the WORDPRESS name and associated domain names and trademarks.

8.    Plaintiffs are informed and believe, and therefore allege, that Defendant OPENDOMAIN.ORG ("Defendant OpenDomain") is a business, held out as a corporation, of unknown form with its principal place of business in an unknown location. Plaintiffs are informed and believe, and therefore allege, that OpenDomain is in the business of purchasing domain names.

9.    Plaintiffs are informed and believe, and therefore allege, that Defendant Ric Johnson ("Defendant Johnson") is the President of Defendant OpenDomain and has participated personally in all of Defendant OpenDomain's wrongful conduct. Defendant Johnson's location is unknown to Plaintiffs.

10.    Plaintiffs are informed and believe, and therefore allege, that Defendant Johnson is listed as the administrative contact for Defendant OpenDomain's web site with Network Solutions, Inc., the registrar for the domain name opendomain.org. The address listed in this registration is Mercer Square #453, 73 Old Dublin Pike, Doylestown, Pennsylvania 18901.

COMPLAINT

<center>INTRADISTRICT ASSIGNMENT</center>

11.    Assignment is appropriate to the San Francisco Division because a substantial part of the events which give rise to the claim have occurred within San Francisco County.

<center>BACKGROUND FACTS</center>

12.    Mr. Mullenweg began using in commerce the WORDPRESS and WORDPRESS.ORG name and trademarks to promote WordPress services and products (the "Products") since at least March 2003. Mr. Mullenweg has used the WORDPRESS and WORDPRESS.ORG name and trademarks continuously in commerce since that time.

13.    Since March 2003, Mr. Mullenweg has developed substantial fame in the WORDPRESS and WORDPRESS.ORG name and trademarks. The WordPress Products are one of the leading software packages for the posting of web logs, or "blogs." Hundreds of thousands of users utilize the WORDPRESS Products for blogging.

14.    The WORDPRESS.ORG website was registered in and used by Mr. Mullenweg continuously since early 2003. Mr. Mullenweg attempted to register in early 2003 WordPress.com, but it was owned by a cybersquatter.

15.    A "cybersquatter" or "cyberpirate" is one who improperly registers, traffics in, or uses a domain name that is confusingly similar, identical, or dilutive to another party's trademark.

16.    Mr. Mullenweg attempted to contact the original cybersquatter owner of WordPress.com to purchase it. That individual never communicated back to Mr. Mullenweg. Mr. Mullenweg placed a backup registration for the site, which would permit him to register the domain should the site ever not be renewed.

17.    In approximately December 2004, Mr. Mullenweg learned that the WordPress.com site had been sold and contacted the new owner, Defendants Johnson and OpenDomain.

<center>-3-</center>

COMPLAINT

18.    Plaintiffs are informed and believe, and therefore allege, that Defendants registered the domain name WordPress.com more than a year after Mr. Mullenweg began using the WORDPRESS and WORDPRESS.COM name and trademarks in commerce with full knowledge of Plaintiffs' usage and goodwill.

## FACTS RELATED TO DEFENDANT OPENDOMAIN

19.    Plaintiffs are informed and believe, and therefore allege, that Defendant OpenDomain is in the business of acquiring domains and then licensing those domain names for use by third parties. Defendant OpenDomain bills itself as "Open Source for Domains," but is a site that by its own admission is in the express business of illegal cyberpiracy, as prohibited by state and federal law.

20.    Plaintiffs are informed and believe, and therefore allege, that unlike true open source projects, where *bona fide owners* of intellectual property license *their own* intellectual to third parties, Defendant OpenDomain purchases domain names whose trademarks belong to third parties. Defendant OpenDomain then seeks to "license" to those rightful third party owners or others the "right" to use the domain name, subject to purported license conditions imposed by Defendant OpenDomain.

21.    Plaintiffs are informed and believe, and therefore allege, that these conditions include a purported requirement that all sites must contain a "predominate and visiable" [sic] link on all pages of the site to OpenDomain.org.

22.    This condition of forced linking harms bona fide trademark owners in a number of ways, including falsely implying ownership, sponsorship, affiliation, or endorsement of a bona fide trademark owner's site by Defendant OpenDomain. Further, compulsory linking to Defendant OpenDomain's site harms the goodwill, tarnishes the reputation, and creates a likelihood of confusion regarding a bona fide trademark owner's marks and site, including by diverting customers from a bona fide trademark owner's site to Defendant OpenDomain's site, over which the bona fide trademark owner has no control.

23.     Plaintiffs are informed and believe, and therefore allege, that the other purported conditions include, among other things, that the bona fide trademark owner's site must be actively marketed and have periodic content change, as well as imposition of restrictions on advertising, site redirection, and content. All licensing terms are purportedly subject to change without notice.

24.     Each of these conditions imposes an illegal and unreasonable burden upon the bona fide owner of a trademark, who, under law, is free to use its mark for all legal purposes as the owner sees fit, and not to have to negotiate with a third party that has not legitimate claim or trademark ownership.

25.     Plaintiffs are informed and believe, and therefore allege, that in multiple Internet postings, Defendant Johnson defends his purchase of Internet sites whose domain names properly belong to third parties as "anti-squatting."

26.     However, the registration of third party domain names which Defendants know are identical, confusingly similar, or dilutive of marks of bona fide trademark owners violates federal and state laws, as alleged further in this Complaint.

## FACTS RELATED TO BAD FAITH OF DEFENDANTS

27.     Plaintiffs are informed and believe, and therefore allege, that Defendants knew that the WORDPRESS and WORDPRESS.ORG name and trademarks were owned by and associated with Mr. Mullenweg. Indeed, Defendants purchased the WordPress.com domain because of their knowledge of Plaintiffs' Products and associated goodwill, reputation, and fame in their name and trademarks.

28.     Plaintiffs are informed and believe, and therefore allege, that Defendants also intended to make WordPress.com a commercial site and to otherwise benefit from ownership of the WordPress.com site. Defendant OpenDomain intended to and did actually utilize the WordPress.com web sites to facilitate commercial activities, gain advantage, and/or generate revenue.

29.    In a December 23, 2004 email, Defendant Johnson admitted that he had knowledge of the WORDPRESS.ORG and WORDPRESS name and trademarks prior to the purchase of WordPress.com: "I have been a developer of computer solutions for more than 25 years. I have reviewed your software before we purchased WordPress.com."

30.    In a January 17, 2005 email, Defendant Johnson wrote of the decision to purchase WordPress.com: "We researched extensively to find the best blogging software that fit our parameters, and WordPress is a great fit. . . . WordPress.com will help people generate revenue and jobs using WordPress."

31.    In an email dated December 22, 2004, Defendant Johnson stated: "One my investors gave a grant for research on blogs, and found that WordPress was in the top 10. You have made a great tool! It was he who signed the check to buy WordPress.com from the squatter. He is very interested in developing a site for COMMERCIAL use of wordpress."

32.    In a December 22, 2004 email message, Defendant Johnson described his vision for the WordPress.com site, including that "It will be a COMMERCIAL site."

33.    In a January 9, 2005 email message, Defendant Johnson stated that "Our hope was to create THE commercial site for WordPress" using the WordPress.com domain.

34.    Plaintiffs are informed and believe, and therefore allege, that in various electronic mail exchanges, Defendant Johnson explained the purported licensing model of Defendant OpenDomain and Defendants' vision for the site. Defendant Johnson indicated that he expected "2-3 million visitors" to Defendants' web sites and wanted to use the WordPress.com domain as part of that effort.

35.    In a public Internet posting from approximately January 27, 2005, Defendant Johnson stated that "It is not our goal to change WordPress, but to

1  provide a place for developers and customers to go for commercial support.

2  Revenue generated will go to further development of WP."

3      36.    In a public Internet posting from approximately January 28, 2005,

4  Defendant Johnson stated that: "We were looking into the model that

5  wordpressblogs and blogthing have set up - Instant WordPress blogs supported by

6  advertising. Another great idea is what Podz does - free installs on a client's server

7  in the hope they will contact the WP Pro for more work in the future. . . . I do [not]

8  know why WordPress.Org or anyone else has set up commercial support for WP

9  yet, but there has been plenty of requests for it. We are NOT WordPress experts,

10  but we do have experience in business ventures. WordPress dot Com gets a large

11  amount of traffic because people expect it - we should not throw that away. That is

12  the crux of my point: WordPress.Com already exists. I think we SHOULD use it,

13  and it SHOULD have a different function from WordPress.Org. Setting up a

14  commercial site for WP is a GOOD thing."

15      37.    In another posting of January 28, 2005, Defendant Johnson again

16  concedes that persons looking for legitimate WORDPRESS services and products

17  would go to the WordPress.com site: "WordPress.Com already exists. People will

18  type in dot com habitually - I can not do anything about this. Because of that, we

19  should use the domain for something."

20      38.    Although in various postings, Defendant Johnson stated that he

21  wanted to use the revenues from such commercial activities, at least in part, for

22  some greater "community" purposes, Defendants were never authorized or

23  licensed by Plaintiffs to use the WORDPRESS name or trademark for any purpose,

24  regardless of Defendants' self perception of social or community good.

25      39.    Mr. Mullenweg, the rightful owner of the WORDPRESS,

26  WORDPRESS.ORG, and WordPress.com name and trademarks did not wish

27  Defendants to commercialize or otherwise utilize the name or marks in any

28  manner.

40.     In various communications in late 2004 and early 2005, Mr. Mullenweg consistently indicated to Defendant Johnson that the trademark and name WORDPRESS and all related names and trademarks belonged to him, that he did not want to be forced to link to third party sites over which he had no control, and did not want to accept other conditions imposed by Defendants. Mr. Mullenweg requested immediate transfer of the WordPress.com domain. Mr. Mullenweg even offered to buy the site, but Defendants refused, stating that selling the website was against the bylaws of Defendant OpenDomain.

41.     Specifically, in a December 23, 2004 electronic mail message, Mr. Mullenweg wrote: "I appreciate that you bought the domain from a squatter, and I would be happy to compensate you back for whatever was paid. I would also be *happy* to connect whatever your business is with the thriving WordPress community and developers -- if you're willing to transfer the domain. However if you're just grabbing a name you don't have any legitimate association with for commercial purposes then you're essentially squatting just like whoever owned the domain before you."

42.     Rather than immediately cease improper use of the domain name, which was in violation of federal and state law, and transfer the domain name to its rightful owner, Defendant Johnson responded in a December 23, 2004 email, accusing Mr. Mullenweg of ingratitude: "And then you go and call me names! Ouchie."

43.     In this December 23, 2004 email, Defendant Johnson outlined the purported requirements for Mr. Mullenweg to use WordPress.com, a restatement of the purported terms of Defendant OpenDomain.

44.     In January 2005, Defendants offered to permit Mr. Mullenweg to take possession of the WordPress.com domain name. In that email, Defendant Johnson attempted to impose additional conditions, including becoming a partner of all WordPress activities, participating in the business development, creating a

COMPLAINT

"structured voting system" and corporate ownership structure (including having something less than "absolute veto power" over the operations of WordPress), and other improper conditions. Mr. Mullenweg rejected these conditions.

45.     In a January 27, 2005 email, Mr. Mullenweg informed Defendant Johnson that users were actually confusing the WordPress.com and WordPress.org web sites and again requested that the Defendants transfer the WordPress.com domain name. Defendant Johnson refused.

46.     Finally, in approximately May 2005, Defendants voluntarily transferred the domain name WordPress.com to Mr. Mullenweg. Defendant Johnson again asked Mr. Mullenweg to accept conditions for this transfer, which Mr. Mullenweg refused to do. Instead, Mr. Mullenweg offered to add a reference to OpenDomain.org from one of his pages. Defendants thereafter completed the transfer.

47.     Mr. Mullenweg now has possession of what has always been rightfully his and which Defendants never had and currently has no right to own, utilize, or license. Any purported terms of agreement to transfer back what has always been and is still rightfully his are legally null and void.

48.     Plaintiffs are informed and believe, and therefore allege, that as a result of Defendants' wrongful conduct, Plaintiffs' customers and others mistakenly confused the relationship between WORDPRESS, WORDPRESS.ORG, and WordPress.com, when WordPress.com was wrongfully utilized by Defendants.

49.     Plaintiffs are informed and believe, and therefore allege, that as a result of Defendants' wrongful conduct, Plaintiffs' customers and others mistakenly confused and continue to confuse the relationship, affiliation, and/or identities of Defendants and Plaintiffs.

50.     By way of non-exclusive example of the continuing confusion related to Defendants' improper claims, in an Internet posting of November 30, 2005, a

user named agent86oz publicly posted the following: "Who is this guy Matt that gets mentioned. I saw a lot of discussion about who was squatting on the domain wordpress.com but it was very hard to understand or follow the progress."

51.    Plaintiffs are informed and believe, and therefore allege, that Defendants intentionally tried to capitalize on Plaintiffs' reputation in the market for its Products by using marks confusingly similar to Plaintiffs' marks.

<u>FACTS RELATED TO DEFENDANTS TAKING MONEY FROM THIRD PARTIES FALSELY USING THE WORDPRESS NAME</u>

52.    At http://opendomain.org/donate/, a web page controlled and maintained by Defendants, the site states: "If you would like to make a monetary donation to WordPress, please use the PayPal button below." A true and correct copy of a printout of this site is attached as Exhibit A.

53.    When one clicks the "MAKE A DONATION" button on this web page, it does not link to any site affiliated with or controlled by Plaintiffs or anyone properly affiliated with WordPress, but instead links to a PayPal website to process the payment: https://www.paypal.com/cgi-bin/webscr. The "Pay To:" line reads 0pend0main@OpenDomain.Org and the "Payment For" line reads "OpenDomain.Org." A true and correct copy of a printout of this site is attached as Exhibit B.

54.    Plaintiffs are informed and believe, and therefore allege, that the monies from this site, taken as donations for WordPress, are going to Defendants.

55.    Plaintiffs never authorized anyone affiliated or associated with Defendants to raise money or take donations on behalf of any entity affiliated with Plaintiffs or use the WORDPRESS name or trademarks.

56.    Defendants' statements that the donations are for WordPress are knowingly false, intended to mislead, and made fraudulently.

57.    Plaintiffs are informed and believe, and therefore allege, that Defendants are taking money from third parties falsely under the WORDPRESS

COMPLAINT

name and trademark and committing fraud against those third parties, using the WORDPRESS name and trademark. Defendants have taken an unknown amount of money from third parties under this fraudulent scheme.

### FACTS RELATED TO DEFAMATION AND INTERFERENCE

58.    Plaintiffs are informed and believe, and therefore allege, that Defendants have engaged in a wrongful pattern of conduct to defame Plaintiffs and to interfere with the actual and prospective economic relationships that Plaintiffs have in their business.

59.    By way of example, on approximately November 16, 2005, Defendant Johnson publicly posted on the Internet the following statement: "Did you talk to Matt about how he broke his word and STOLE the domain WordPress.Com from me?"

60.    Such comments are libelous and have exposed Mr. Mullenweg to public contempt or scorn because they accuse him of immoral and potentially illegal conduct in the operation of his profession and business.

61.    By way of non-exclusive example of such public ridicule and scorn caused by Defendants, a blogger named Scott, repeated Defendants' false accusations, stating in a public posting on November 26, 2005: "A while back it was posted that Matt [Mullenweg] of the stolen domain name 'Wordpress.com' decided to lie, cheat, and steal his way to getting his form of justice."

62.    In a public Internet posting of approximately October 25, 2005 to a third party licensee of Plaintiffs, Flock, Defendant Johnson, on behalf of Defendant OpenDomain threatened Flock and its users and posted the following message: "Please remove any direct or indirect link to the domain WordPress.Com from the Flock browser, web site, and documents immediately."

63.    On multiple occasions in public forums, Defendants have made accusations that Mr. Mullenweg has breached an agreement he had with

Defendants. By way of non-exclusive example, on November 7, 2005 in a public Internet posting, Defendant Johnson accused Mr. Mullenweg of breaking his word.

64.    On multiple occasions in public forums, Defendants have made claims that Defendant OpenDomain is still the rightful owner of WordPress.com.

### FIRST CLAIM

**Violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

65.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 64 of the Complaint.

66.    Defendants' acts described above, including their use in commerce of marks that are confusingly similar to Plaintiffs' marks, have caused and in the future are likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendants.

67.    As a consequence of Defendants' violations, Plaintiffs are entitled to an injunction as set forth below, Defendants' profits, Plaintiffs' damages, and costs of action. Moreover, because this is an exceptional case, involving calculated and willful misconduct by Defendants, Plaintiffs are entitled to recover treble damages, treble profits, and attorneys' fees against Defendants.

### SECOND CLAIM

**Cybersquatting Violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)**

68.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 67 of the Complaint.

69.    Defendants have registered, traffic in, and/or use the domain name WORDPRESS.COM and the name WORDPRESS, which is confusingly similar to Plaintiff's distinctive and famous WORDPRESS and WORDPRESS.ORG marks.

70.    Defendants have demonstrated a bad faith intent to profit from the WORDPRESS and WORDPRESS.ORG marks by registration and commercial use of the WORDPRESS.COM domain name. This conduct violates 15 U.S.C. § 1125 (d).

71.    As a consequence of Defendants' registration and bad faith use of the WordPress.com domain name, Plaintiffs are entitled to an award against Defendants in the amount of Plaintiffs' damages, in an amount to be proven at trial, Defendants' profits arising from the infringement, as well as Plaintiffs' costs and attorneys' fees incurred in connection with this action.

<u>THIRD CLAIM</u>

**Federal Trademark Dilution, 15 U.S.C. § 1125(c)**

72.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 71 of the Complaint.

73.    Plaintiffs' WORDPRESS and WORDPRESS.ORG marks are famous and distinctive marks. They were famous before Defendants began the commercial activities complained of in this action.

74.    Defendants have made commercial use of WordPress.com and WORDPRESS. Defendants' use diluted and continues to dilute the distinctive quality of Plaintiffs' marks. Defendants intended to weaken Plaintiffs' reputation and to dilute Plaintiffs' marks.

75.    Defendants' wrongful conduct has created and continues to create actual confusion among Plaintiffs' customers, thus demonstrating the dilutive effect that Defendants' conduct has had on Plaintiffs' marks. Defendants' wrongful conduct has also tarnished Plaintiffs' reputation in the marketplace.

76.    As a consequence of Defendants' willful dilution of Plaintiffs' marks, Plaintiffs are entitled to an injunction as set forth below, Defendants' profits, Plaintiffs' damages, and costs of action. Moreover, because this is an exceptional case, Plaintiffs are entitled to treble damages, treble profits, and attorneys' fees against Defendants.

<div align="center">FOURTH CLAIM</div>

<div align="center">**California Trademark Dilution, Calif. Bus. & Prof. Code § 14330**</div>

77.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 76 of the Complaint.

78.     Defendants' actions described above constitute trademark dilution of Plaintiffs' marks under California law. These actions have injured Plaintiffs.

79.     Defendants' wrongful conduct has created and continues to create actual confusion among Plaintiffs' customers, thus demonstrating the dilutive effect that Defendants' conduct has had on Plaintiffs' marks.

80.     As a consequence, Plaintiffs are entitled to an injunction as set forth below.

<div align="center">FIFTH CLAIM</div>

<div align="center">**Common Law Trademark Infringement**</div>

81.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 80 of the Complaint.

82.     Defendants' use of the confusingly similar mark WORDPRESS.COM, use of the WORDPRESS name, and other acts described above, constitute trademark infringement under the common law of California.

83.     Defendants' wrongful conduct has created and continues to create actual confusion among Plaintiffs' customers with respect to the source of the goods and services provided by Plaintiffs.

84.     Defendants' acts described above have greatly and irreparably damaged Plaintiffs and continues to do so. Plaintiffs are entitled to an injunction as well as damages in an amount to be proved at trial. Moreover, because of Defendants' willful and malicious conduct, Plaintiffs are entitled to exemplary damages in an amount to be determined in the enlightened conscience of the jury.

## SIXTH CLAIM

### Intentional Interference with Contract

85.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 84 of the Complaint.

86.    Plaintiffs have existing contractual and licensing arrangements with third parties.

87.    Defendants knew of these existing relationships and arrangements and intentionally sought to interfere with them.

88.    As a result of Defendants' intentional, unreasonable, malicious, and unjustified conduct, including their interference, threats, and improper accusations against Plaintiffs and third parties, such as Flock and its users, Defendants have intentionally interfered in the contractual relations of Plaintiffs.

89.    By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages, lost profits, and other damages from Defendants in amounts to be proven at trial.

## SEVENTH CLAIM

### Intentional Interference with Prospective Economic Advantage

90.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 89 of the Complaint.

91.    Plaintiffs have prospective economic relationships with many potential customers for its goods and services.

92.    Defendants knew of these prospective relationships and arrangements and intentionally sought to interfere with them.

93.    As a result of Defendants' intentional, unreasonable, malicious, and unjustified conduct, including their interference and improper accusations against Plaintiffs and third parties, such as Flock and its users, Defendants have intentionally interfered in the prospective economic advantage of Plaintiffs.

94.    By reason of the foregoing, Plaintiffs are entitled to recover compensatory damages, lost profits, and other damages from Defendants in amounts to be proven at trial.

<div align="center">EIGHTH CLAIM</div>

<div align="center">**Defamation**</div>

95.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 94 of the Complaint.

96.    Mr. Mullenweg has at all times he has been involved with WordPress enjoyed a good reputation, both generally and in his occupation.

97.    On or about November 16, 2005, Defendant Johnson publicly posted on the Internet an accusation that Mr. Mullenweg "STOLE" the WordPress.com domain name.

98.    Defendant Johnson has repeated these allegations that Mr. Mullenweg stole Defendant's property in other public forums.

99.    These allegations are false.

100.    These statements are libelous on their face. They expose Mr. Mullenweg to hatred, contempt, ridicule, and obloquy because they accuse him of immoral and potentially illegal conduct in the operation of his profession.

101.    These accusations by Defendants were made directly to potential and actual customers, colleagues, and other professionals associated with Mr. Mullenweg. These statements were seen and read by these other individuals.

102.    As a proximate result of these statements, Mr. Mullenweg has suffered loss of his reputation, shame, and mortification to his general damage. In addition, Mr. Mullenweg suffered injury to his business, trade, profession, or occupation.

103.    These statements were published by Defendants with malice, oppression, and fraud and thus Plaintiffs seek an award of punitive damages.

<div align="center">NINTH CLAIM</div>

**<div align="center">Unlawful Business Practices, Calif. Bus. & Prof. Code § 17200</div>**

104.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 103 of the Complaint.

105.   In committing the acts described above, Defendants have engaged in unlawful and unfair business practices and have performed unfair, deceptive, and misleading acts that have irreparably injured, and threaten to continue to injure, Plaintiffs in their business and property.

106.   As a consequence, Plaintiffs are entitled, under Calif. Bus. & Prof. Code §§ 17200 and 17203, to an injunction and restitution.

<div align="center">TENTH CLAIM</div>

**<div align="center">False and Misleading Statements, Calif. Bus. & Prof. Code § 17500</div>**

107.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 106 of the Complaint.

108.   In committing the acts described above, Defendants have made, and continue to make, false and misleading statements in connection with the sales of services and/or property in violation of Calif. Bus. & Prof. Code §§ 17500 and 17505.

109.   These acts have irreparably injured, and are likely to continue to injure, Plaintiffs in their business and property and entitle them, under Calif. Bus. & Prof. Code §§ 17500 and 17535, to an injunction and restitution.

<div align="center">ELEVENTH CLAIM</div>

**<div align="center">Common Law Unfair Competition</div>**

110.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 109 of the Complaint.

111.   Defendants' acts described above constitute unfair competition in violation of the common law of the State of California.

COMPLAINT

112.   Defendants' acts have greatly and irreparably damaged Plaintiffs and will continue to damage Plaintiffs unless enjoined by this Court. Plaintiffs are entitled to injunctive relief in addition to damages in an amount to be proved at trial. Moreover, because of Defendants' willful and malicious conduct, Plaintiffs are entitled to exemplary damages in an amount to be determined in the enlightened conscience of the jury.

<div align="center">TWELFTH CLAIM

**Declaratory Relief**</div>

113.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 112 of the Complaint.

114.   Defendants have wrongfully made public statements that the WordPress.com domain belongs to them and not to Plaintiffs, and that an enforceable agreement exists between Mr. Mullenweg and Defendant OpenDomain.

115.   An actual and justiciable controversy therefore exists between Plaintiffs and Defendants, as, among other things, to the rightful ownership of the WordPress.com domain name and purported existence of an agreement.

116.   Plaintiffs seek a judgment under 28 U.S.C. § 2201 et seq. declaring that Plaintiffs are the rightful owners of the WordPress.com domain name and that no contract exists between any one of the Plaintiffs, on the one hand, and any one of the Defendants, on the other.

WHEREFORE, Plaintiffs pray for relief as set forth below.

COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request:

a.      Defendants, their subsidiaries, parent and affiliated companies, successors, assigns, officers, directors, agents, partners, servants, employees, and attorneys of those companies or individuals, and all others in active concert or participation with Defendants, be enjoined and restrained during the pendency of this action, and permanently thereafter, from using WORDPRESS, WORDPRESS.ORG, WORDPRESS.COM, and any other confusingly similar term;

b.      Defendants to give all right, title, and interest in and to the domain name WORDPRESS.COM to Plaintiffs to the extent such right, title, and interest are not already owned by Plaintiffs;

c.      Defendants, and all others enjoined in this action be required, jointly and severally to file with the Court and serve on Plaintiffs an affidavit setting forth in detail the manner and form in which they have complied with the terms of the injunction;

d.      Defendants be required, jointly and severally, to account for and pay to Plaintiffs the amount of all damages incurred by Plaintiffs by reason of Defendants' actions alleged in this action;

e.      A declaration that the domain name WordPress.com and all related marks and associated goodwill belong to Plaintiffs;

f.      A declaration that no enforceable agreement exists between any of the Plaintiffs on the one hand, and any of the Defendants on the other;

g.      That the Court award Plaintiffs consequential damages, and other damages in amounts to be proven at trial;

h.      That the Court award Plaintiffs multiplied or enhanced damages, as permitted by law;

COMPLAINT

1          i.      That the Court award Plaintiffs exemplary and punitive

2 damages in an amount sufficient to punish and deter Defendants and others from

3 similar malicious, oppressive, and fraudulent conduct in the future;

4          j.      Defendants be required, jointly and severally, to account for

5 and pay to Plaintiffs treble the amount of all profits derived by Defendants as a

6 result of the acts alleged in this action;

7          k.      Defendants be required to provide restitution for its unlawful

8 business practices and false and misleading statements;

9          l.      Defendants be required to pay special damages according to

10 proof;

11          m.      Defendants be ordered to pay exemplary or punitive damages

12 under Calif. Civ. Code § 3294;

13          n.      Defendants be required to pay to Plaintiffs the costs of this

14 action, together with reasonable attorneys' fees and disbursements; and

15          j.      That Plaintiffs be awarded such further relief as is just and

16 equitable.

17 <div align="center">**DEMAND FOR JURY TRIAL**</div>

18      Plaintiffs hereby demands trial by jury on all issues triable by jury.

19

20 DATED: November 30, 2005

21                          GREENBERG TRAURIG, LLP

22

23

24                  By: _____

                         David Frazee

25

26                     Attorneys for Plaintiffs

                    MATTHEW MULLENWEG

27                     AND AUTOMATTIC INC.

28

# OpenDomain.Org

Open Source for Domains

---

## Donate

## Donate to OpenDomain.Org

The best way to help is to spread the word! If you know of any Open groups in need of a domain, let us know. Or better yet, tell them to <u>contact us</u>

If you own a domain that you would like to donate to the OpenDomain program, we would make sure it finds a good home. You may even specify special requirements for your domain.

If you would like to make a monetary donation to WordPress, please use the PayPal button below. Donations support the continued development and acquisition of domains from squatters.

[ **Make a Donation** ]

-  [ Search ]

-

## Pages

- ○ <u>Donate</u>
  - ■ <u>Thank you</u>
- ○ <u>Donating Domains</u>
- ○ <u>Free Domains</u>
- ○ <u>TERMS</u>
- ○ <u>Xaml .Net</u>

## Archives

- ○ <u>September 2005</u>
- ○ <u>August 2005</u>
- ○ <u>March 2005</u>
- ○ <u>January 2005</u>

## Categories

- ○ <u>Free</u> (2)
- ○ <u>General</u> (1)
- ○ <u>Success Stories</u> (5)
- ○ <u>TERMS</u> (1)

## Links

- ○ <u>Free Television</u> Free.TV offers free television service, free cable or free satellite service

with free internet service and a free computer. You can also get a free dvd player, tv programming guide, free email, free video games and a free web page

- **Meta**

  - Login
  - Valid XHTML
  - XFN

---

OpenDomain.Org is proudly powered by WordPress
Sponsored by Free.TV
Entries (RSS) and Comments (RSS).

# 0pend0main@OpenDomain.Org



## Checkout

Secur

**PayPal** is the secure payment processor for your seller, **0pend0main@OpenDomain.Org**. <u>Learn more</u> about PayPal.

**Pay To:** 0pend0main@OpenDomain.Org
**Payment For:** OpenDomain.Org
**Amount:** 
**Shipping & Handling:** $0.00 USD

---

### Don't Have a PayPal Account?

Pay securely using your credit card, or bank account where available.



 **OR**

### Have a PayPal Account?

Login now to pay with your credit card, account, or PayPal balance.

**Email Address:** 
**PayPal Password:** 

<u>Forgot your passwo</u>
<u>Forgot your email?</u>

[ Secure Checkout ]

---

PayPal protects your privacy and security.
For more information, read our <u>User Agreement</u> and <u>Privacy Policy</u>.